**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

---

Civil Case No. 25-cv-00692-PAB-NRN

     (Consolidated with Civil Case Nos. 25-cv-00698-PAB-NRN, 25-cv-00728-PAB-NRN,
25-cv-00819-PAB-NRN, and 25-cv-00937-KAS)

---

Civil Case No. 25-cv-00692-PAB-NRN

MICHELLE O'LEARY, on behalf of herself and all others similarly situated,

     Plaintiff,

v.

YES COMMUNITIES, LLC,

     Defendant.

---

Civil Case No. 25-cv-00698-PAB-NRN

TERRY WILKINS, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

YES COMMUNITIES, LLC,

     Defendant.

---

Civil Case No. 25-cv-00728-PAB-NRN

TERESA STARKS, on behalf of herself and all others similarly situated,

     Plaintiff,

v.

YES COMMUNITIES, LLC,

     Defendant.

---

Civil Case No. 25-cv-00819-PAB-NRN

BRENTON KAY, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

YES COMMUNITIES, LLC,

     Defendant.

Civil Case No. 25-cv-00937-KAS

JASMIN BURNS, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

YES COMMUNITIES, LLC,

     Defendant.

**MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MOTION

Plaintiffs Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), hereby move this Court to:

1.     Grant preliminary approval of the settlement described in the "Settlement Agreement" between Plaintiffs and Defendant Yes Communities, LLC ("Defendant" or "Yes Communities");

2.     Preliminarily certify the Settlement Class for purposes of Settlement;

3.     Appoint Plaintiffs Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns as Class Representatives;

4.     Appoint Jeff Ostrow of Kopelowitz Ostrow P.A, Raina Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of EKSM, LLP, Gary E. Mason of Mason LLP, and Gary M. Klinger of Milberg, PLLC as Settlement Class Counsel;

5.     Approve the notice plan set forth in the Settlement Agreement;

6.     Appoint Analytics Consulting LLC as Claims Administrator;

7.     Approve the form and content of the Postcard Notice (Ex. 1), Long Form Notice (Ex. 2), and Claim Form (Ex. 3);

8.     Schedule a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiff's service award.

This Motion is based upon: (1) this Motion; (2) the accompanying Memorandum in support; (3) the Settlement Agreement; (4) the Declaration of Raina C. Borrelli filed in support

and exhibits thereto;  (5) the [Proposed] Preliminary Approval Order; (6) the [Proposed] Final

Approval Order; (7) the records, pleadings, and papers filed in this action; and (8) upon such other

documentary and oral evidence or argument as may be presented to the Court at or prior to the

hearing of this Motion.

## MEMORANDUM

### I.   INTRODUCTION

Plaintiffs Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns,

individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), hereby

respectfully request that the Court grant preliminary approval of the Parties' proposed class action

settlement in this matter under Federal Rule of Civil Procedure 23. This case arises out of a

December 2024 data breach in which cybercriminals stole the personally identifiable information

("PII") of the former and current clients and employees of Defendant Yes Communities, LLC

("Defendant" or "Yes Communities"), including their names, Social Security numbers, driver's

license numbers, and financial account information, among other categories of PII. After several

weeks of arm's-length negotiations, beginning before the October 23, 2025 mediation session with

Hon. David E. Jones (Ret.) and continuing thereafter, the Parties agreed to a settlement in

November 2025, which is memorialized in the Settlement Agreement (the "Settlement" or "S.A.")

attached hereto as **Exhibit A**.

The Settlement provides timely and excellent benefits to the Settlement Class.[1] Under the

Settlement, Yes Communities shall make available to Settlement Class Members who do not

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement, attached as
Exhibit A.

timely and validly opt-out of participation in this Settlement, on a wholly claims-made basis, the following compensation: (a) up to $2,500 per person for documented losses; (b)  up to $80 for lost time (at a rate of $20 per hour for up to four hours); (c) an alternative cash payment of $50 (in the alternative to claims for documented losses and/or lost time; and (d) credit monitoring services (three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance). There is no cap on these settlement benefits, and thus Yes Communities will pay all valid claims. Separate and apart from any other sums, Yes Communities will also pay for attorneys' fees and costs, a service award to each Class Representative, and all costs of notice and claims administration. Additionally, Yes Communities will provide a confidential declaration to Class Counsel describing its information security improvements since the Data Incident and estimating the cost of those improvements. Yes Communities agrees to pay for such ongoing security changes separate and apart from other settlement benefits.

As explained below, the Settlement satisfies the preliminary approval standard—it is likely to be approved as fair, reasonable, and adequate. After all, the Settlement provides the exact relief sought by the lawsuit. Thus, Plaintiff respectfully moves this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Analytics Consulting LLC as Claims Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns as Representatives of the Class; (6) appointing Jeff Ostrow of Kopelowitz Ostrow P.A, Raina Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of EKSM, LLP, Gary E. Mason of Mason LLP, and Gary M. Klinger of Milberg, PLLC as Settlement Class Counsel; (7) approving the form and content of the Postcard Notice, Long Form

Notice, and Claim Form, attached to the Settlement Agreement as Exhibit 1 through Exhibit 3, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims. Moreover, the Settlement will provide the Settlement Class Members with substantial relief—that precisely addresses the harms inflicted by the Data Incident—without the risk of delay from protracted litigation. The terms of the Settlement are consistent with precedent concerning class settlements in this Circuit and elsewhere. Thus, this Court should grant Plaintiffs' motion and allow notice to be provided to the Settlement Class.

## II.     STATEMENT OF FACTS

### A.  Background

Yes Communities owns manufactured home communities located in 23 states. Consolidated Class Action Complaint ("CCAC"), ¶ 24. In the regular course of its business, Defendant handles individuals' Private Information. *Id.* ¶ 26. Depending on the circumstances, that information may include names, Social Security numbers, driver's license numbers, and financial account information, among other categories of PII. *Id.* ¶ 47. On or about December 11, 2024, Defendant experienced a system breach during which hackers targeted and accessed Defendant's network systems, some of which contained Private Information belonging to 10,675 individuals located in the United States or its territories. *Id.* ¶¶ 42-45. On or about February 24, 2025, Defendant began sending notification letters to impacted individuals. *Id.* ¶ 6.

**B.  Procedural History**

Following Defendant's notification to those affected by the Data Incident, beginning on March 4, 2025, five lawsuits relating to the Data Incident were filed against Defendant in the United States District Court for the District of Colorado: *O'Leary v. YES Communities, LLC*, Case No. 1:25-cv-692; *Wilkins v. YES Communities, LLC*, Case No. 1:25-cv-698; *Starks v. YES Communities, LLC*, Case No. 1:25-cv-728; *Kay v. YES Communities, LLC*, Case No. 1:25-cv-819; and *Burns v. YES Communities, LLC*, Case No. 25-cv-00937.  **Exhibit B,** Declaration of Raina C. Borrelli ("Borrelli Decl."), ¶ 3. Plaintiffs' counsel in those actions conferred and collectively decided to work together to pursue the claims of their respective plaintiffs and the putative class of individuals impacted in the Data Incident. *Id.* ¶ 5. On March 20, 2025, Plaintiffs' counsel filed a Motion to Consolidate the *O'Leary*, *Wilkins*, *Starks*, and *Kay* actions, which was granted on April 22, 2025. *Id.* ¶ 6; Dkts. 9 and 14. The *Burns* action was filed after the Motion to Consolidate was filed, but was nevertheless incorporated in the Court's order consolidating the related actions. Dkt. 24. Plaintiffs alleged that, because of the Data Incident, Defendant was liable for: negligence, negligence *per se*, invasion of privacy, breach of contract, breach of implied contract, unjust enrichment, and declaratory judgment. *Id*. ¶¶ 253-350.

Recognizing the benefits of early resolution, the Parties discussed the potential for early resolution of this matter, and agreed to mediate with the Honorable David E. Jones (ret.) on October 23, 2025. Ex. B, Borrelli Decl. ¶ 9. Judge Jones is a skilled mediator specializing in a variety of complex matters, including Data Breach Class Actions. *Id*. Given their agreement to mediate, on July 28, 2025, the Parties filed a joint motion to stay the case pending mediation, which the Court granted On July 30, 2025. Dkts. 35-37. In the order granting the requested stay,

Court ordered that the Parties file a Status Report regarding the outcome of the mediation on or before October 30, 2025. Dkt. 37. On October 30, 2025, the Parties requested to extend the stay by an additional 14 days, so that they could continue settlement negotiations, which was granted the same day. Dkts. 39-41. In the order extending the stay, the Court ordered that the parties file a Status Report on or before November 30, 2025. Dkt. 41. The Parties finally agreed to the Settlement in early November 2025. *Id.* ¶ 14.

Prior to mediation, Settlement Class Counsel carried out a thorough investigation of the claims. *Id.* ¶¶ 4, 10. The settlement negotiations also included a significant informal exchange of information in advance of mediation, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. *Id.* ¶ 10. Additionally, both Parties prepared detailed mediation statements outlining their positions on the legal and factual claims at issue and their positions on the framework for resolution. *Id.* ¶ 11. The Parties were unable to reach an agreement on the material terms of the Settlement on October 23, 2025. *Id.* ¶ 14. However, through continued negotiations and with the continued assistance of Judge Jones, the Parties successfully reached an agreement on the material terms of the settlement on or around November 10, 2025. *Id.* Throughout this process, the Parties advocated vigorously for the interests of their respective clients. *Id.* ¶ 15. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both Parties forcefully advocating the position of their respective clients. *Id.* In the weeks that followed agreement on the key terms of the Settlement, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id.* ¶ 16. Then the Settlement was finalized and executed in January 2026. *See*

Ex. A. As discussed further below, Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members.

## III.    SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of a Settlement Class defined as "all living individuals in the United States who were sent notice by Defendant that their Private Information was impacted in the Data Incident." S.A. ¶ 60. Excluded from the Settlement Class are: (a) all persons who are directors and officers of Defendant; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff.  *Id*. All individuals who fall within the definition of the Settlement Class and do not opt-out of the Settlement are Settlement Class Members. *Id*. ¶ 61.

### B.  Settlement Benefits

The Settlement provides Class Members with timely benefits targeted at remediating the specific harms they have suffered because of the Data Incident. *See* S.A. ¶¶ 66-70. Specifically, Yes Communities shall provide the following benefits on a claims-made basis to Settlement Class Members who do not timely and validly opt-out of participation in this Settlement. *Id.*

#### 1.  Monetary Relief for Losses

*First*, Settlement Class Members can claim Cash Payment A, which provides for up to $2,500 per Settlement Cass Member for Documented Losses related to fraud and/or identity theft as a result of the Data Incident. *Id*. ¶ 67(a). Documented Losses include, by way of example, unreimbursed losses relating to fraud or identity theft: if (i) the loss is an actual, documented, and

unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. *Id.*

  ***Second***, Settlement Class Members can also claim Cash Payment B, which provides for up to $20 per hour for up to four hours of Lost Time (or $80 total). *Id.* ¶ 67(b). Settlement Class Members must attest to the amount of time spent to receive this benefit, which can be claimed in addition to Cash Payment A, Documented Losses. *Id.*

### 2.  Alternative Cash Payment

  Yes Communities will also provide Cash Payment C, an alternative cash payment of $50 per claimant in the alternative to claims for Documented Losses and/or Lost Time. *Id.* ¶ 67(c). There is no documentation required to claim this benefit. *Id.* However, participating Settlement Class Members can choose either or both Cash Payment A (Documented Losses) and Cash Payment B (Lost Time), or in the alternative, Cash Payment C (Alternate Cash). *Id.* ¶ 66.

### 3.  Credit Monitoring and Identify Theft Protections

  Settlement Class Members can also obtain three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance, regardless of which Cash Payment they select. *Id.* ¶ 68.

### 4.  Remedial Measures

  In addition to providing monetary relief, Yes Communities will provide a confidential declaration to Class Counsel describing its information security improvements since the Data Incident and estimating the cost of those improvements. *Id.* ¶ 69. Yes Communities agrees to pay for such ongoing security changes separate and apart from other settlement benefits. *Id.*

### C.  Claims Administration

Notably, all Notice and Claims Administration Costs will be paid by Yes Communities. *Id*. ¶ 61. The Parties agreed that Analytics Consulting LLC will serve as the Claims Administrator to process all claims subject to approval by the Court. *Id*. ¶ 73. The Claims Administrator will establish and administer a publicly viewable Settlement Website to provide important information and to receive electronic Claim Forms. *Id*. ¶ 74. The Claims Administrator will enable Settlement Class Members to submit a claim either by (1) U.S. mail or (2) electronically through the Settlement Website. *Id*. The Claims Administrator will provide compensation (as detailed *supra*) to Class Members who submit valid and timely claim forms from the Settlement Fund. *Id*. Notably, payment for approved Claims shall be provided in the form selected by the Settlement Class Members on their respective claim forms (*e.g.,* check or other method). *Id*. *See also* Ex. 3 to the S.A. Claims will be subject to review for completeness and validity by a Claims Administrator, and Claimants will have the opportunity to dispute the Claims Administrator's initial determination. *Id*. ¶¶ 72, 90. The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims and must submit an invoice to Defendant for payment of all Valid Claims within 30 days of the Effective Date or as soon as all Claim deficiencies are resolved. *Id*. ¶¶ 90-92. No later than 60 days of the Effective date, the Settlement Administrator shall: (a) distribute Cash Payments; and (b) ensure Credit Monitoring activation codes are emailed to Settlement Class Members. *Id*. ¶ 92.

### D.  Notice to Class Members

Within five (5) days of the entry of the Preliminary Approval Order, Yes Communities shall provide the Claims Administrator with the names and mailing addresses of the Settlement Class Members whose mailing addresses are known to Yes Communities. *Id*. ¶¶ 27, 75. Within 30

days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program by sending the Notice in Exhibit 3 to the S.A. to all Settlement Class Members whose addresses are known to Yes Communities by first-class U.S. mail. *Id*. ¶ 76. Notice will be provided via both: (1) directly by mail, and (2) via publication on the Settlement Website. *Id*. ¶¶ 76-80.

### E. Opt-Outs

Settlement Class Members may opt-out from receiving the benefits of the settlement, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. *Id*. ¶ 80. The Notice will inform each Class Member of their right to request exclusion from the Class—thereby preserving any claims they may have. *Id*. A Settlement Class member may opt-out at any time before the Opt-Out Deadline by mailing a request to opt-out to the Settlement Administrator postmarked no later than the Opt-Out Deadline. *Id*. For a Settlement Class Member's Opt-Out Request to be valid, it must be personally signed by the Settlement Class member and contain the requestor's name, address, telephone number, and email address, and include a statement indicating a request to be excluded from the Settlement Class. *Id*. The Parties recommend to the Court that the Opt-Out Deadline be 30 days before the initial scheduled Final Approval Hearing. *Id*. ¶ 46.

### F. Objections

Settlement Class Members may object to the Settlement, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. *Id*. ¶ 81-82. Objections must be filed with the Court, and sent by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id*. For an objection to be

considered by the Court, the relevant Settlement Class Member must comply with instructions outlined in the Long Form Notice and submit the objection before the Objection Deadline, as specified in the Notice. Additionally, the Settlement Class Member must not have excluded themselves from the Settlement Class. *Id.* The Parties recommend to the Court that the Objection Deadline be 30 days before the initial scheduled Final Approval Hearing. *Id.* ¶ 45.

### G. Attorneys' Fees and Service Awards

The Parties did not discuss or negotiate fees or service awards until they agreed on the terms benefiting the Class. Ex. B, Borrelli Decl. ¶ 13. In so doing, the Parties avoided conflict with the Class's interests, thereby fulfilling their responsibilities to the Class. *Id.* Thus, Class Counsel will request an award of attorneys' fees and costs in an amount not to exceed two-hundred and seventeen thousand dollars ($217,000.00). S.A. ¶ 99. And Class Counsel will request a Service Award of $2,500 per Class Representative ($10,000 total) subject to court approval, which intended to recognize Plaintiffs' efforts in the litigation and commitment to the Class. *Id.* ¶ 98.

### H. Release of Claims

The Parties tailored the release to affect only those claims related to the Data Incident—defined as "Released Claims" in the Settlement Agreement. *Id.* ¶ 54. Thus, any Class Members who do not exclude themselves from the Settlement will release their claims against Defendant related to the Data Incident. *Id.*

## IV. ARGUMENT

Under Rule 23(e), the settlement of a class action requires court approval, which is appropriate "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court's review of a proposed class action settlement generally

involves two steps: preliminary approval and then final approval. Federal Judicial Center, *Manual for Complex Litigation* § 21.632 (4th ed. 2004). At the preliminary approval step, the court does a "preliminary fairness evaluation" of the "fairness, reasonableness, and adequacy of the settlement terms" and whether it is likely that "the proposed class satisfies the criteria [of] Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id*.

Critically, the Supreme Court is clear that while "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). Thus, "[t]he strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings." *Or. Laborers Emp'rs Pension Tr. Fund v. Maxar Techs. Inc*., Civil Action No. 19-cv-0124, 2024 U.S. Dist. LEXIS 4704, at *11 (D. Colo. Jan. 9, 2024); *see also Peace Officers' Annuity & Ben. Fund of Ga. v. Davita Inc*., Civil Action No. 17-cv-0304, 2021 U.S. Dist. LEXIS 71038, at *11 (D. Colo. Apr. 13, 2021) (same); *Ramos v. Health*, Civil Action No. 15-cv-2556, 2020 U.S. Dist. LEXIS 210056, at *9 (D. Colo. Nov. 10, 2020) (same).

Notably, "the standard that governs the preliminary approval inquiry is ***less demanding*** than the standard that applies at the final approval phase." *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 128 (D. Colo. 2016) (emphasis added). In fact, "[p]reliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to

its fairness." *Beasley v. TTEC Servs. Corp.*, Civil Action No. 22-cv-00097, 2023 U.S. Dist. LEXIS 81211, at *3 (D. Colo. May 9, 2023) (quoting *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593 (D. Colo. Aug. 28, 2013)). Thus, "[a] proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id*. at *3-4 (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

### A.  Voluntary Settlement of Class Actions is Favored.

Judicial and public policies strongly favor the voluntary conciliation and settlement of class actions where the inherent costs, delays, and risks of protracted complex litigation can drain judicial resources and overwhelm any potential benefit to plaintiffs and/or Class Members. *See* William B. Rubenstein, 4 *Newberg and Rubenstein on Class Actions* § 13:1 (6th ed. 2022) (hereinafter *Newberg*) (noting the strong judicial policy in favor of class action settlement); *see also Or. Laborers Emp'rs Pension Tr. Fund*, 2024 U.S. Dist. LEXIS 4704, at *11 (D. Colo.) ("[T]he presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

In other words, "[s]ettlement agreements are to be ***encouraged*** because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Or. Laborers Emp'rs Pension Tr. Fund v.*, 2024 U.S. Dist. LEXIS 4704, at *11 (emphasis added) (internal quotation omitted). After all, settlement leads to "the conservation of judicial

resources[.]" *Id.* Moreover, "the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

### B.  Preliminary Certification of the Proposed Settlement Class is Warranted.

Before granting preliminary approval, the Court should first determine if certification is appropriate for the proposed Settlement Class. *See Manual for Complex Litigation.*, § 21.632 (4th ed. 2013). Certification is appropriate if the proposed class, representatives, and counsel satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). And under 23(b)(3), the class action must satisfy the two requirements of predominance and superiority. *Id*. 615–16. Still, "[t]o certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Beasley v. TTEC Servs. Corp*., 2023 U.S. Dist. LEXIS 81211, at *6.

Data breach class actions—precisely like this one—are routinely certified for settlement. *See e.g., Beasley v. Ttec Servs. Corp*., 2024 U.S. Dist. LEXIS 29759, at *20 (D. Colo. Feb. 21, 2024) (granting final approval of data breach class action settlement); *see also In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case meets all the standards for certification under Rule 23 and should be similarly certified.

### C.  The Proposed Settlement Class Meets the Requirements of Rule 23(a).

### 1.    The Class is sufficiently numerous.

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). For example, "553 putative class members" readily satisfies this requirement. *Hunter v. CC Gaming, LLC*, No. 19-cv-01979, 2020 U.S. Dist. LEXIS 264583, at *10 (D. Colo. May 12, 2020). Here, the putative class includes approximately 10,675 individuals. S.A. ¶ 3. Thus, numerosity is clearly met.

### 2.    Questions of law and fact are common to the Class.

Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc*, 564 U.S. at 350. But "[f]actual differences in the claims of the individual class members ***should not*** result in the denial of class certification where common questions of law exist." *Beasley*, 2023 U.S. Dist. LEXIS 81211, at *12 (citing *DG v. Devaughn*, 594 F.3d 1188, 1194-95 (10th Cir. 2010)) (emphasis added). Thus, "[a] finding of commonality requires only a ***single question*** of law or fact common to the entire class." *Hunter*, 2020 U.S. Dist. LEXIS 264583, at *10 (quoting *Devaughn*, 594 F.3d at 1194-95 (10th Cir. 2010)) (emphasis added); *see also Beasley*, 2023 U.S. Dist. LEXIS 81211, at *12 ("Even a single common question will satisfy commonality.") (quoting *Wal-Mart Stores, Inc*, 564 U.S. at 359).

For example, in the data breach case *Beasley*, commonality was satisfied when common questions included (1) "whether [defendant] failed to adequately safeguard the records of class members," (2) "whether [defendant's] data security systems prior to and during the breach complied with applicable data security laws and regulations; and (3) "whether [defendant]s

conduct rose to the level of negligence." 2023 U.S. Dist. LEXIS 81211, at *12–13 (D. Colo.). Like

*Beasley*, commonality is satisfied here. Plaintiffs and Class Members all have common questions

of law and fact arising out of the same Data Incident. *See, e.g.,* CCAC, ¶¶ 2, 108, 125, 144, 163,

183. Specifically, this case involves common questions of law and fact, such as (1) "Whether

Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Sensitive

Information;" (2) "Whether Defendant failed to implement and maintain reasonable security

procedures and practices appropriate to the nature and scope of the information compromised in

the Data Breach;" (3) "Whether Defendant were negligent in maintaining, protecting, and securing

Sensitive Information;" (4) "Whether Defendant breached contract promises to safeguard

Plaintiffs and the Class's Sensitive Information;" (5) "Whether Defendant took reasonable

measures to determine the extent of the Data Breach after discovering it;" and (6) "Whether

Defendant's Breach Notice was reasonable," among other common questions. CCAC, ¶¶ 251-52.

Thus, commonality is satisfied.

### 3.  Plaintiffs' Claims and Defenses are typical.

Typicality requires that the claims or defenses of the class representative be typical of the

claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). And "[a] plaintiff's claim is typical of

class claims if it challenges the same conduct that would be challenged by the class." *Hunter*, 2020

U.S. Dist. LEXIS 264583, at *11 (quoting *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-

REB-MEH, 2011 U.S. Dist. LEXIS 58352, at *8 (D. Colo. June 1, 2011)). Still, "differing fact

situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of

the class representative and class members are based on the same legal or remedial theory."

*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

For example, in the data breach case *Beasley*, typicality was satisfied when "the representative plaintiffs' claims and the proposed class members' claims all stem from the same event, the attack on [defendant's] computers and servers, as well as the same cybersecurity protocols that [defendant] had in place to protect data." 2023 U.S. Dist. LEXIS 81211, at *14 (D. Colo.). Like *Beasley*, Plaintiffs here satisfies typicality. After all, Plaintiffs and Class Members' claims all stem from the same event (the Data Incident involving Yes Communities on or in December) as well as the same cybersecurity protocols that Yes Communities had in place. *See e.g.,* CCAC, ¶¶ 42-67, 97. Moreover, Plaintiffs' and Class Members' claims are based on the same legal theories (*i.e.,* negligence, negligence *per se*, invasion of privacy, breach of contract, breach of implied contract, unjust enrichment, and declaratory judgment). *Id.* ¶¶ 78–177.

Moreover, typicality is generally found in data breach class actions like this one. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 490 (D. Minn. 2015); *Thomsen v. Morley Co., Inc.*, No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703, at *6 (E.D. Mich. Nov. 4, 2022); *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 234943, at *15 (E.D. Va. Sep. 13, 2022). Thus, typicality is satisfied.

### 4. Plaintiffs will provide fair and adequate representation.

Adequacy requires that the class representative must fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class." *Hunter*, 2020 U.S. Dist. LEXIS 264583, at *12 (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010)).

In the Tenth Circuit, two critical questions are: "(1) does the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class." *Id*. (citing *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187-88 (10th Cir. 2002)). Notably, "[a]bsent evidence to the contrary, a presumption of adequate representation is invoked." *Id*. (quoting *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998)).

**First**, in the data breach case *Beasley*, the first prong was satisfied when (i) plaintiffs' and class members' interests were aligned (given that they sought relief from the same data breach), and (ii) there was "nothing in the record to show any conflict of interest between the representative plaintiffs or counsel and the rest of the class." 2023 U.S. Dist. LEXIS 81211, at *14–16 (D. Colo.). Likewise, the first prong is satisfied here because (i) Plaintiffs' and Class Members' interests are aligned given that they seek relief from the same data breach (Yes Communities' Data Incident), and (ii) there is nothing in the record to show any conflict of interest between Plaintiffs, counsel, and the rest of the Class. *See e.g.,* CCAC, ¶¶ 3, 6, 42; Borrelli Decl. ¶ 13.

**Second**, in the data breach case *Beasley*, the second prong was satisfied when (i) the proposed class counsel had "decades of experience as class action litigators," and (ii) the "proposed class counsel negotiated an early-stage settlement that will guarantee immediate relief to class members." 2023 U.S. Dist. LEXIS 81211, at *16–17 (D. Colo.). Likewise, the second prong is satisfied here because (i) proposed class counsel have significant experience in class action litigation (and especially in data breach class actions), and (ii) proposed class counsel likewise negotiated an early-stage settlement that guarantees immediate relief to class members. Ex. B, Borrelli Decl. ¶¶ 18, 26-33; Exhibit 1 through Exhibit 5 (the resumes of Strauss Borrelli, PLLC;

Jeff Ostrow of Kopelowitz Ostrow P.A; Leigh S. Montgomery of EKSM, LLP; Gary E. Mason of

Mason LLP; and Gary M. Klinger of Milberg, PLLC). Thus, adequacy is satisfied.

### D.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

#### 1.  Common questions of law and fact predominate.

Predominance requires that questions of law or fact common to class members must

predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The

Supreme Court is clear that predominance "does *not* require" a plaintiff seeking class certification

to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc*., 568

U.S. at 468–69 (emphasis added). Rather, predominance merely requires "that common questions

'*predominate* over any questions affecting only individual [class] members.'" *Id*. (quoting Fed. R.

Civ. P. 23(b)(3)). In other words, "[c]lass-wide issues predominate 'if resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues are more substantial than the

issues subject to only individualized proof.'" *Hunter*, 2020 U.S. Dist. LEXIS 264583, at *13

(quoting *Pliego*, 313 F.R.D. at 127 (D. Colo. 2016)).

In data breach class actions, courts recognize that predominance is readily satisfied because

such cases by their very nature predominately implicate common questions. *See, e.g., Thomsen v.

Morley Co., Inc*., No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703, at *8 (E.D. Mich. Nov. 4,

2022) (finding predominance satisfied because class members all suffered similarly from the exact

same data breach); *In re Sonic Corp. Customer Data Breach Litig*., No. 1:17-md-02807-JSG, 2020

U.S. Dist. LEXIS 204169, at *13 (N.D. Ohio Nov. 2, 2020) (same); *Kostka v. Dickey's Barbecue

Rests., Inc*., No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *28 (N.D. Tex. Oct. 14,

2022) (same); *Hapka v. Carecentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (same).

For example, in the data breach case *Beasley*, predominance was satisfied when "[c]ommon questions include whether [defendant] had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of the representative plaintiffs and the class members, and whether [defendant] breached that duty." 2023 U.S. Dist. LEXIS 81211, at *18 (D. Colo.). And "[b]ecause the common questions of law and fact depend upon the conduct of [defendant], these questions predominate as they are unaffected by the particularized conduct of individual class members." *Id*. at *19. Like *Beasley*, predominance is satisfied here because the common questions include, *inter alia*, "Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Sensitive Information" and "Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach." *See e.g.,* CCAC, ¶¶ 19–44, 76. As such, the common questions depend on Yes Communities' alleged conduct and are unaffected by any particularized conduct of Class Members. *See id*. Thus, predominance is satisfied.

### 2. Class action treatment is superior to other methods.

Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The purpose of this requirement is to "assure that the class action is the most efficient and effective means of resolving the controversy." Wright & Miller, *supra*, § 1779. Notably, "[c]ourts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited

resources are otherwise unlikely to be pursued." *Hunter*, 2020 U.S. Dist. LEXIS 264583, at *14 (citing *Pliego*, 313 F.R.D. at 127).

In data breach class actions, courts recognize that superiority is readily satisfied: "[b]ecause the data-breach issues predominate, [and] it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information." *Thomsen*, 2022 U.S. Dist. LEXIS 201703, at *9; *see also In re Target Corp. Customer Data Sec. Breach Litig*., 309 F.R.D. 482, 490 (D. Minn. 2015) (holding that "the class action device is the superior method for resolving this dispute"); *Bowdle v. King's Seafood Co., LLC*, No. SACV 21-01784-CJC (JDEx), 2022 U.S. Dist. LEXIS 240383, at *14 (C.D. Cal. Oct. 19, 2022) (same); *Attias v. Carefirst, Inc*., 344 F.R.D. 38, 57 (D.D.C. 2023) (same).

For example, in the data breach case *Beasley*, superiority was satisfied when "individual recovery for these claims is likely to be too small to provide an incentive for individual class members to adjudicate individual claims," and "[t]here are also no issues regarding interclass conflicts as all class members are eligible to receive…identity theft monitoring services, as well as a [cash  payment] or a reimbursement award of up to $5,000 for documented out-of-pocket expenses." 2023 U.S. Dist. LEXIS 81211, at *19. Like *Beasley*, superiority is satisfied here for precisely the same reasons. For one, individual litigation by the 10,675 Class Members would be highly inefficient and unnecessarily burden judicial resources. S.A. ¶ 3. And notably, the Settlement will provide (a) up to $2,500 per person for documented losses; (b)  up to $80 for lost time (at a rate of $20 per hour for up to four hours); (c) an alternative cash payment of $50 (in the alternative to claims for documented losses and/or lost time; and (d) credit monitoring services

(three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance). *Id.* ¶¶ 66-68. Thus, superiority is satisfied.

### E. The Settlement is Fair, Reasonable, and Adequate.

Under Rule 23(e), a district court may approve a settlement that is "fair, reasonable, and adequate." Critically, [t]here is a strong presumption in favor of finding a settlement fair." *Hunter*, 2020 U.S. Dist. LEXIS 264583, at *19 (D. Colo.). And in the Tenth Circuit, there are four factors that courts consider: "(1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* at *20 (citing *Rutter & Wilbanks Corp.*, 314 F.3d at 1188 (10th Cir. 2002)).

***First***, this settlement was fairly and honestly negotiated. Prior to mediation, the Parties exchanged information allowing both sides to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Ex. B, Borrelli Decl. ¶ 10. Additionally, both Parties prepared detailed mediation statements outlining their positions on the legal and factual claims at issue and their positions on the framework for resolution. *Id.* ¶ 11. Thereafter, the Parties engaged in mediation with the Hon. David E. Jones (ret.). *Id.* ¶ 12. Even though the Parties did not agree to settle the case during the mediation, they continued their negotiations beyond the mediation, and with the continued assistance of Judge Jones, the Parties reached resolution on key terms on or about November 10, 2025. *Id.* ¶ 14. This is significant because "[u]tilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable,

was reached without collusion and should therefore be approved." *In re Molycorp, Inc*. Sec. Litig., 2017 U.S. Dist. LEXIS 215174, at *13 (D. Colo.). Likewise, in *Beasley*, the court held that "negotiations were done fairly and honestly" when "[t]he parties participated in an all-day mediation session before mediator Bennett Picker[.]" 2023 U.S. Dist. LEXIS 81211, at *22-23. Thus, this factor weighs in favor of preliminary approval.

*Second*, serious questions of law and fact drove this settlement. For example, in *Beasley*, this factor weighed toward preliminary approval because "plaintiffs concede that their success at trial is far from certain," "[defendant] asserts several case-dispositive defenses and data breach cases generally face substantial hurdles," and "[defendant] denies any wrongdoing or liability." 2023 U.S. Dist. LEXIS 81211, at *23 (internal quotations omitted). Likewise, "Plaintiffs are also aware that a successful outcome is uncertain." Ex. B, Borrelli Decl. ¶ 18. And Yes Communities enters this Settlement without any admission of liability or wrongdoing." S.A. ¶ 12. Thus, this factor weighs in favor of preliminary approval.

*Third*, the value of immediate recovery via the Settlement outweighs the mere possibility of future relief after protracted and expensive litigation. For example, in *Beasley*, the court held that "immediate recovery outweighs the time and costs inherent in complex data breach litigation" given that the proposed settlement would allow the class to "immediately take advantage of Settlement benefits designed to mitigate and prevent future harm[.]" 2023 U.S. Dist. LEXIS 81211, at *23 (quoting *In re Home Depot Inc., Customer Data Sec. Breach Litig*., No. 1:14-md-02583, 2016 U.S. Dist. LEXIS 200113, at *39 (N.D. Ga. Aug. 23, 2016)).  Likewise, this Settlement would provide Class Members immediate relief (*i.e*., cash payment(s) and credit monitoring). S.A. ¶¶ 66-68. In other words, "[n]ot only does this Settlement avoid the risks of

protracted litigation, but it also provides benefits to the Class Members today—as opposed to the mere possibility of future relief." Ex. B, Borrelli Decl. ¶ 22. Thus, this factor weighs in favor of preliminary approval.

*Fourth*, it is the judgment of the Parties that the settlement is fair and reasonable. For example, in *Beasley*, this factor weighed toward preliminary approval when "[p]laintiffs' counsel has extensive experience in data breach litigation and states that the settlement is very reasonable considering average out-of-pocket expenses in data breach cases." 2023 U.S. Dist. LEXIS 81211, at *24. Likewise, here, "[c]ounsel has years of experience representing individuals in complex class actions (including data breach class actions)" and "the terms of the Settlement are well within the range of those accepted by courts in similar data breach class action settlements." Ex. B, Borrelli Decl. ¶¶ 18-19. Thus, this factor weighs in favor of preliminary approval.

Taken together, these factors show that the proposed Settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e). And coupled with the "presumption of fairness," the parties have sufficiently established that preliminary approval is warranted. *See e.g., Hunter*, 2020 U.S. Dist. LEXIS 264583, at *19, 22 (stating that "[t]here is a strong presumption in favor of finding a settlement fair" and holding that settlement "is reasonable for both sides, and the terms of the settlement are fair"); *Beasley*, 2023 U.S. Dist. LEXIS 81211, at *25 ("The Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed settlement agreement.").

### F.  The Court Should Approve the Proposed Notice Program.

The Court should approve the notice plan because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, class members are entitled to the "best

notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. And notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

For example, in *Beasley*, the notice plan was sufficient when "[t]he parties agree[d] to provide direct and individualized notice, in the form of postcards, to class members via United States Postal Service first class mail" and defendant "provide[d] the claims administrator with a list of class members, including names and physical mailing addresses." 2023 U.S. Dist. LEXIS 81211, at *26–27. Likewise, here, "the postcard form of Notice of the Settlement…will be distributed to those Settlement Class Members for whom physical addresses are maintained by Defendant" which Defendant will provide to the Settlement Administrator within five days of preliminary approval. S.A. ¶¶ 49, 75. Additionally, the Long Form Notice shall be available to Settlement Class Members by mail on request made to the Settlement Administrator. *Id.* ¶ 39. And "no later than the day before Notice is first initiated" the Settlement Website will be established,

which will include "hyperlinked access to the [Settlement] Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted." *Id.* ¶¶ 63, 79. Finally, both the Postcard Notice and Long Form Notice provide all the information required by Fed. R. Civ. P. 23(c)(2)(B). S.A., Exs. 1-2. Thus, the proposed notice plan satisfies and even exceeds that which is required by due process.

### G.  The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). As evidenced in the attached Ms. Borrelli's Declaration and the resumes of Strauss Borrelli, Jeff Ostrow, Leigh Montgomery, Gary E. Mason, and Gary M. Klinger attached thereto, the proposed Class Counsel meets these requirements. *See* Ex. B, Borrelli Decl. ¶¶ 26-33 and Exhibit 1 through Exhibit 5 attached thereto. Thus, the Court should appoint Jeff Ostrow of Kopelowitz Ostrow P.A., Raina Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of EKSM, LLP, Gary E. Mason of Mason LLP, and Gary M. Klinger of Milberg, PLLC as Settlement Class Counsel under Rule 23(g).

## V.    CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Analytics Consulting LLC as Claims Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns as Representatives of the Class; (6) appointing Jeff Ostrow of Kopelowitz of Ostrow P.A., Raina Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of EKSM, LLP, Gary E. Mason of Mason LLP, and Gary M. Klinger of Milberg, PLLC as Settlement Class Counsel; (7) approving the form and content of the Postcard Notice, Long Form Notice, and Claim Form, attached to the Settlement as Exhibit 1 through Exhibit 3, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

Dated: January 12, 2026                Respectfully Submitted,

By:  *Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

**SANFORD LAW FIRM, PLLC**
Josh Sanford (Col. Bar No. 44358)
10800 Financial Center Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
josh@sanfordlawfirm.com

**EKSM, LLP**
Jarrett Ellzey
Leigh S. Montgomery
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931
jellzey@eksm.com
lmontgomery@eksm.com

**KOPELOWITZ OSTROW P.A.**
Jeff Ostrow
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: 954-525-4100
ostrow@kolawyers.com

**MASON LLP**
Gary E. Mason
Danielle L. Perry
Lisa A. White
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
lwhite@masonllp.com

**MILBERG, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on January 12, 2026, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record via the ECF system.

DATED this 12th day of January, 2026.

STRAUSS BORRELLI PLLC

By:  */s/ Raina C. Borrelli*
     Raina C. Borrelli
     raina@straussborrelli.com
     STRAUSS BORRELLI PLLC
     One Magnificent Mile
     980 N Michigan Avenue, Suite 1610
     Chicago IL, 60611
     Telephone: (872) 263-1100
     Facsimile: (872) 263-1109