IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

_____

Civil Case No. 25-cv-00692-PAB-NRN

    (Consolidated with Civil Case Nos. 25-cv-00698-PAB-NRN, 25-cv-00728-PAB-NRN, 25-cv-00819-PAB-NRN, and 25-cv-00937-PAB-NRN)

_____

Civil Case No. 25-cv-00692-PAB-NRN

MICHELLE O'LEARY, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

YES COMMUNITIES, LLC,

    Defendant.

_____

Civil Case No. 25-cv-00698-PAB-NRN

TERRY WILKINS, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

YES COMMUNITIES, LLC,

    Defendant.

_____

Civil Case No. 25-cv-00728-PAB-NRN

TERESA STARKS, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

YES COMMUNITIES, LLC,

    Defendant.

Civil Case No. 25-cv-00819-PAB-NRN

BRENTON KAY, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

YES COMMUNITIES, LLC,

      Defendant.

Civil Case No. 25-cv-00937-PAB-NRN

JASMIN BURNS, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

YES COMMUNITIES, LLC,

      Defendant.

**ORDER**

This matter comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [Docket No. 51]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.    BACKGROUND

On March 20, 2025, plaintiff Michelle O'Leary filed a motion to consolidate *O'Leary v. Yes Communities*, *LLC*, 25-cv-00692-PAB-NRN, with the following cases: *Wilkins v. Yes Communities, LLC*, 25-cv-00698-JLK, *Starks v. Yes Communities, LLC,* 25-cv-00728-PAB, and *Kay v. Yes Communities, LLC*, 25-cv-00819-NYW-CYC. Docket No. 9 at 2. On April 22, 2025, the Court granted the motion. Docket No. 13. On May

2

15, 2025, plaintiffs in the consolidated cases filed an amended consolidated complaint.
Docket No. 21.  On June 2, 2025, the Court ordered *Burns v. YES Communities, LLC*,
25-cv-00937-KAS, to be consolidated with this case.  *See* Docket No. 24.

In the consolidated complaint, plaintiffs, on behalf of themselves and those
similarly situated, bring claims for negligence, negligence per se, invasion of privacy,
breach of contract, breach of implied contract, and unjust enrichment.  *See* Docket No.
21 at 52-69.  Plaintiffs' claims arise out of a December 2024 data breach affecting
defendant's network that resulted in the alleged exposure of plaintiffs' personally
identifiable information.  *See id.* at 3-4, ¶¶ 6-9.  Plaintiffs seek to represent a settlement
class, pursuant to Fed. R. Civ. P. 23, defined as:

> [A]ll living individuals in the United States who were sent notice by Defendant
> that their Private Information was impacted in the Data Incident.

Docket No. 51-1 at 10-11, ¶ 60.

## II.    PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23
occurs in two stages.  In the first stage, the court preliminarily certifies a settlement
class, preliminarily approves the settlement agreement, and authorizes that notice be
given to the class so that interested class members may object to the settlement's
fairness.  In the second stage, after notice is given to the putative class, the court holds
a fairness hearing at which it addresses (1) any timely objections to the treatment of this
litigation as a class action and (2) any objections to the fairness, reasonableness, or
adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v.
Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

3

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at \*3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.*" See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the court's preliminary inquiry.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently, a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  Plaintiffs bear the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook*, 386 F.3d at 968).  Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).

The parties ask the Court to certify a settlement class under Rule 23(b)(3).  *See* Docket No. 51 at 21-24.  Under that provision, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  To certify a settlement class, the court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all other Rule 23 requirements apply and demand heightened attention in the settlement context because the court generally lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the court must separately evaluate whether the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e).[1]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, a court will direct notice to all class members who would be bound by the proposed settlement agreement and hold a fairness hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As noted above, although the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the court's preliminary inquiry.  A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable

---

[1] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## III.    ANALYSIS OF PROPOSED SETTLEMENT AGREEMENT

### A.  The Settlement Agreement

The parties' motion for preliminary approval of the class action settlement seeks certification of the following Settlement Class: "all living individuals in the United States who were sent notice by Defendant that their Private Information was impacted in the Data Incident." *See* Docket No. 51-1 at 10-11, ¶ 60.

The settlement agreement provides that defendant will pay the Settlement Administration Costs, Cash Payments and Credit Monitoring for the Settlement Class, and any Court-awarded attorney's fees, costs, and Service Awards. *See id.* at 12, ¶ 66. Settlement Administration Costs are defined as "all costs and fees of the Settlement Administrator regarding Notice and Settlement administration." *Id.* at 10, ¶ 59. Cash Payments are the compensation Settlement Class Members are eligible to receive upon submission of a claim form. *See id.* at 12, ¶ 67. Settlement Class Members can submit a claim for either or both Cash Payment A – Documented Losses and Cash Payment B – Lost Time. *See id.* Under Cash Payment A, each Settlement Class Member is eligible to submit a claim for up to $2,500 "upon presentment of reasonable documentation of losses related to fraud and/or identity theft as a result of the Data Incident." *Id.* at 12-13, ¶ 67.a. Under Cash Payment B, Settlement Class Members "who spent time remedying issues related to the Data Incident may receive

7

reimbursement in the amount of $20.00 per hour for up to four hours of time (for a total of $80.00)." *See id.* at 13-14, ¶ 67.b.  Settlement Class Members must attest to the amount of time spent.  *See id.*  As an alternative to receiving Cash Payment A and/or Cash Payment B, Settlement Class Members may elect to receive Cash Payment C – Alternate Cash, which is a cash payment in the amount of $50.  *See id.* at 14, ¶ 67.c.  A Settlement Class Member opting for Cash Payment C is not required to submit documentation.  *See id.*  Defendant shall provide three years of credit monitoring to Settlement Class Members.  *See id.*, ¶ 68.  Plaintiffs will seek an award of attorney's fees and costs of up to $217,000.  *See id.* 51-1 at 66-67, ¶ 18.  Plaintiffs will also seek Service Awards of up to $2,500 for each Class Representative.  *See id.* at 26, ¶ 98.

## B.  Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed after a certain number; however, the Tenth Circuit has never adopted a presumption of numerosity. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).

Here, the parties state that the Settlement Class contains approximately 10,675 individuals.  Docket No. 51 at 17.  Given *Trevizo*, the mere number of class members does not create a presumption of numerosity; however, given that the Tenth Circuit has found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."), the

8

Court agrees that joinder of more than 10,000 people would be impracticable and that
the numerosity requirement is met.

### C. <u>Commonality</u>

Rule 23(a) requires a district court to ensure that "there are questions of law or
fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of
the individual class members should not result in the denial of class certification where
common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires
that plaintiffs demonstrate the class members have "suffered the same injury" such that
the claims of the class are based on a common contention and that the determination of
the truth or falsity of this contention "will resolve an issue that is central to the validity of
each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs
must have a common question of fact or law that will connect many individual claims to
the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th
Cir. 2011).  Even a single common question will satisfy commonality.  *Dukes*, 564 U.S.
at 359.

The parties state that this case involves common questions of law and fact as the
class members' claims arise out of the same data breach.  *See* Docket No. 51 at 18.
Specifically, the parties argue that this case involves the following common questions of
law and fact:

> (1) Whether Defendant had a duty to use reasonable care in safeguarding
> Plaintiffs' and the Class's Sensitive Information; (2) Whether Defendant failed to
> implement and maintain reasonable security procedures and practices
> appropriate to the nature and scope of the information compromised in the Data
> Breach; (3) Whether Defendant were negligent in maintaining, protecting, and
> securing Sensitive Information; (4) Whether Defendant breached contract
> promises to safeguard Plaintiffs and the Class's Sensitive Information; (5)
> Whether Defendant took reasonable measures to determine the extent of the

Data Breach after discovering it; and (6) Whether Defendant's Breach Notice was reasonable, among other common questions.

*Id*. (internal quotations omitted).  Because a "finding of commonality requires only a single question of law or fact common to the entire class," *see Devaughn*, 594 F.3d at 1195, the Court finds that the commonality requirement is satisfied.

### D.  **Typicality**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198–99.  Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation and quotation omitted).  The parties contend that the Class Representatives' claims are typical of the class because their claims arise from the same event.  *See* Docket No. 51 at 19.  Furthermore, the parties contend that all claims

10

are based on the same legal theories. *Id.* The Court agrees that the Class

Representatives' claims are typical claims of the proposed class and that the typicality

requirement is satisfied.

### E. Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Supreme Court has

noted, the "adequacy-of-representation requirement tends to merge with the

commonality and typicality criteria of Rule 23(a), which serve as guideposts for

determining whether maintenance of a class action is economical and whether the

named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence." *Amchem*, 521

U.S. at 626 n.20 (internal quotations omitted). As such, the "inquiry under Rule 23(a)(4)

serves to uncover conflicts of interest between named parties and the class they seek to

represent." *Id.* at 625. To be an adequate class representative, the "representative

must be part of the class and possess the same interest and suffer the same injury as

the class members." *Id*. at 625-26*.*

The Tenth Circuit has identified two questions relevant to the adequacy of

representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v.*

*Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). "Adequate

representation depends on, among other factors, an absence of antagonism between

11

representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by the Representative Plaintiffs and their counsel. The parties state that the Representative Plaintiffs' and class members' interests "are aligned given that they seek relief from the same data breach" and that there is "nothing in the record to show any conflict of interest between Plaintiffs, counsel, and the rest of the Class." Docket No. 51 at 20.

With regard to the second adequacy factor, the proposed class counsel, Jeff Ostrow of Kopelowitz Ostrow P.A., Raina Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of EKSM, LLP, Gary E. Mason of Mason LLP, and Gary M. Klinger of Milberg, PLLC, have "significant experience in class action litigation (and especially in data breach class actions)" and "negotiated an early-stage settlement that guarantees immediate relief to class members." *Id.* There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action, and, to the extent any such questions do arise, they will be considered at the fairness hearing. Accordingly, at this preliminary stage, because the Representative Plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that the adequacy requirement is satisfied. *See Rutter*, 314 F.3d at 1188.

### F. Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class

resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615. Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624. Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quotation omitted). Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement." *Amchem*, 521 U.S. at 623.

The Court agrees that, in data breach cases such as this, predominance is satisfied because there are common questions as to whether defendant had a duty to

exercise reasonable care in protecting plaintiffs' personally identifiable information and whether defendant breached that duty.  *See* Docket No. 51 at 21-22.  Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation, saving both class members and defendants significant time and legal costs to adjudicate common legal and factual issues.  Additionally, plaintiffs state that there are no issues of interclass conflict and, given the small value of the individual claims and lack of incentive to adjudicate such claims, a class action is a superior method for resolution of this dispute.  *See id.* at 22-24.

Given that the class members' claims arise from the same events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense and promote uniformity of decision to similarly situated persons.  Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104.  Therefore, because class members will receive the same type of relief and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation.  *See Amchem*, 521 U.S. at 623.

### G. Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*,

14

629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the

Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements

affecting their rights when the representatives become fainthearted before the action is

adjudicated or are able to secure satisfaction of their individual claims by a compromise"

(citations omitted)).

To determine whether a proposed settlement is fair, reasonable, and adequate,

courts consider the following factors: (1) whether the proposed settlement was fairly and

honestly negotiated; (2) whether serious questions of law and fact exist, placing the

ultimate outcome of the litigation in doubt; (3) whether the value of an immediate

recovery outweighs the mere possibility of future relief after protracted and expensive

litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts

usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial

presumption of fairness" to a proposed settlement where: (1) it is the result of arm's

length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected).  Based on the information available to the Court, the Court notes the

following, which weigh in favor of preliminary approval: the proposed settlement

agreement is the result of mediation between experienced counsel with the Hon. David

E. Jones (ret.) and subsequent negotiations; defendant denies any liability or

wrongdoing; the value of immediate recovery through settlement outweighs the mere

possibility of future relief after protracted litigation; and plaintiffs' counsel judges the

15

settlement to be fair and reasonable.  *See* Docket No. 51 at 24-26.  The Court therefore finds that negotiations were conducted fairly and honestly.

The Settlement Agreement provides that class counsel will move for an attorney's fees award of up to $217,000, that is separate from defendant's obligation to pay Settlement Administration Costs and Settlement Class Member Benefits.  *See* Docket No. 51-1 at 26, ¶ 99.   Local Rule 54.3(b) requires that a motion for attorney's fees shall include the following for each person for whom fees are claimed: (1) a summary of the relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.  D.C.COLO.LCivR 54.3(b).  To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002).  A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995).

Because class counsel has not yet moved for attorney's fees pursuant to Local Rule 54.3(b), the Court will not determine the precise amount of attorney's fees that

16

class counsel is entitled to.[2]  Rather, the Court will determine whether the maximum

amount of attorney's fees provided for in the settlement agreement is fair and

reasonable.  The parties contend that they did "not discuss or negotiate fees or service

awards until they agreed on the terms benefiting the Class" and, "[i]n doing so, the

Parties avoided conflict with the Class's interests, thereby fulfilling their responsibilities

to the Class."  Docket No. at 51 at 13.  At a minimum, each of the 10,675 class

members is eligible to receive $50 under Cash Payment C, resulting in a total recovery

of $533,750.  *See* Docket No. 51-1 at 6, ¶ 20.  The proposed attorney's fee award

comprises approximately 40% of this minimum recovery, which is within the customary

range for fees.  *See Johnston v. Camino Nat. Res., LLC*, No. 19-cv-02742-CMA-SKC,

2021 WL 2550165, at *2 (D. Colo. June 22, 2021) (finding that an attorney's fee award

that is 40% of the settlement fund is "within the normal range for a contingent fee

award").  Provided that class counsel's motion for attorney's fees sufficiently supports

the amount requested, the Court finds that the attorney's fee provision of the settlement

agreement is reasonable.   Regarding the $2,500 service award for each

Representative Plaintiff, the Court finds that this amount is reasonable and

compensates the Representative Plaintiffs for their efforts in pursuing this litigation.  *See*

*Beasley v. TTEC Servs. Corp.*, No. 22-cv-00097-PAB-STV, 2023 WL 3323311, at *4 (D.

Colo. May 9, 2023) (approving a $2,500 service award).

As stated above, if every class member filed a claim and opted for Cash

Payment C, each class member would receive a recovery of $50 in addition to free

---

[2] Plaintiffs shall file a motion for attorney's fees that complies with the Local
Rules no later than 30 days before the final fairness hearing.

identify theft monitoring services.  "The relatively early Settlement in this case benefits the Settlement Class immensely because they can immediately take advantage of Settlement benefits designed to mitigate and prevent future harm including identity monitoring" services.  *Beasley*, 2023 WL 3323311, at *8 (quoting *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016)).  "Courts presiding over similar cases have recognized that the legal issues involved in data breach litigation are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues."  *Home Depot*, 2016 WL 6902351, at *5 (alteration, internal quotation, and citation omitted). Given the uncertainty of class members' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex data breach litigation.  Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.

Certifying the class will allow the Court to determine whether there are members of the class who challenge the fairness of the parties' proposed settlement agreement. Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536-38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *In re Crocs, Inc. Sec. Litig.*,

18

2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at 535, is sufficient to preliminarily approve the terms of the proposed settlement agreement.

## IV.    NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d at 1110 (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar."  *DeJulius*, 429 F.3d at 944.

The parties state that they will send notice in the form of postcards to each member of the class, with defendant providing physical addresses to the Settlement Administrator.  *See* Docket No. 51 at 27.  The postcard contains information regarding the class action, the terms of the settlement agreement, attorney's fees and expenses, the fairness hearing, and how individuals can opt-out of the class or object to the terms of the settlement agreement.  *See* Docket No. 51-1 at 41-42; Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  Additionally, a long form of the notice will be available to class members by mail, upon request made to the Settlement Administrator.  *See* Docket No. 51 at 27-28; Docket No. 51-1 at 44-52.  The parties state that they will establish a settlement website, containing access to the settlement agreement, this order, the long-form notice, the claim form, the parties' motion for final approval of the class, plaintiffs' motion for attorney's fees, costs, and service awards, and the final approval order.  *See* Docket No. 51 at 27-28.  Furthermore, the parties have agreed to make the changes to the notices proposed by the Court.  *See* Docket Nos. 53, 54.

Based on the foregoing, the Court is satisfied that the parties' proposed notice is reasonably calculated to apprise the absent class members of the action.  *See In re Integra*, 262 F.3d at 1111.

## V.    CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, the court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  The settlement agreement lists Jeff Ostrow of Kopelowitz Ostrow P.A, Raina Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of EKSM, LLP, Gary E. Mason of Mason LLP, and Gary M. Klinger of Milberg, PLLC as class counsel.  Docket No. 51-1 at 6, ¶ 26.  The Court finds that class counsel has sufficient experience in class actions and their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment.  Therefore, the Court finds that it is appropriate to appoint Mr. Ostrow, Ms. Borrelli, Ms. Montgomery, Mr. Mason, and Mr. Klinger as class counsel.

## VI.    CONCLUSION

Therefore, it is

**ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [Docket No. 51] is **GRANTED**.  It is further

**ORDERED** that the class, defined as follows, shall be preliminarily certified pursuant to Fed. R. Civ. P. 23:

> All living individuals in the United States who were sent notice by Defendant that their Private Information was impacted in the Data Incident.

It is further

**ORDERED** that Michelle O'Leary, Teresa Starks, Terry Wilkins, Brenton Kay, and Jasmin Burns are appointed as Class Representatives.  It is further

**ORDERED** that Jeff Ostrow, Raina Borrelli, Leigh S. Montgomery, Gary E. Mason, and Gary M. Klinger are appointed as Class Counsel.  It is further

**ORDERED** that Analytics Consulting LLC is appointed as Claims Administrator. It is further

**ORDERED** that the proposed notices and claim form, Docket No. 51-1 at 40-58, subject to the discussed revisions, are approved.  It is further

**ORDERED** that the parties shall contact the Court at brimmer_chambers@cod.uscourts.gov to schedule a final fairness hearing within seven days of the date of this order.  It is further

**ORDERED** that plaintiffs shall file their motion for attorney's fees no later than 30 days before the final fairness hearing.

DATED July 22, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge