**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 25-cv-00692-PAB-NRN

(Consolidated with Civil Case Nos. 25-cv-00698-PAB-NRN, 25-cv-00728-PAB-NRN, 25-cv-00819-PAB-NRN, and 25-cv-00937-KAS)

---

Civil Case No. 25-cv-00692-PAB-NRN

MICHELLE O'LEARY, on behalf of herself and all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

---

Civil Case No. 25-cv-00698-PAB-NRN

TERRY WILKINS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

---

Civil Case No. 25-cv-00728-PAB-NRN

TERESA STARKS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

---

Civil Case No. 25-cv-00819-PAB-NRN

BRENTON KAY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

Civil Case No. 25-cv-00937-KAS

JASMIN BURNS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**

## I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) and this Court's July 22, 2026 Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (ECF 55), Plaintiffs Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, hereby respectfully move this Court to approve an award of combined attorneys' fees and expenses in the amount of $217,000. Plaintiffs also respectfully move this Court for Service Awards for the Class Representatives in the amount of $2,500 each (for a total of $10,000).

The Settlement,[1] and the efforts of Settlement Class Counsel, created substantial relief for Settlement Class Members. Specifically Settlement Class Members may claim; (a) up to $2,500 per person for documented losses; (b) up to $80 for lost time (at a rate of $20 per hour for up to four hours); (c) an alternative cash payment of $50 (in the alternative to claims for documented losses and/or lost time; and (d) credit monitoring services (three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance). There is no cap on these settlement benefits, and thus Yes Communities will pay all valid claims. Separate and apart from any other sums, Yes Communities will also pay for attorneys' fees and costs, a service award to each Class Representative, and all costs of notice and claims administration. Additionally, Yes Communities will provide a confidential declaration to Class Counsel describing its information security improvements since the Data Incident and estimating the cost of those improvements. Yes Communities agrees to pay for such ongoing security changes separate and apart from other settlement benefits.

This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by Defendant, which was represented by a well-regarded law firm. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. Declaration of Gary M. Klinger ("Fee Decl."), attached hereto as Exhibit 1, ¶ 21. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class.

---

[1] The capitalized terms used in this Motion shall have the same meaning as defined in the Settlement Agreement ("Settlement Agreement" or "S.A."), except as may otherwise be indicated. ECF 51-1.

*Id.* ¶ 22.

As compensation for the substantial benefit conferred upon the Settlement Class, Settlement Class Counsel requests this Court award attorneys' fees in the amount of $217,000, inclusive of costs and expenses. This fee request conservatively represents only 6% of the recovery to the class, even if not a single class member suffered documented losses as a result of the Data Incident.[2] This request is contemplated by the Settlement Agreement, and Settlement Class Counsel apprised the Court of this request in Plaintiffs' Motion for Preliminary Approval. S.A. ¶ 99; ECF 51. This amount was also clearly delineated in the Long Form Notice to the Settlement Class, and, as of October5, 2026, *zero* class members have requested exclusion or objected to the Settlement.

Federal district courts in Colorado have routinely approved attorneys' fees based on the potential recovery to the class that equal one-third of the "customary fee" for awards in common benefit settlements. Plaintiffs' request for attorneys' fees of just 6% of the modestly calculated settlement benefit is well below the customary fee. Plaintiffs' $7,001.79 request for costs and expenses actually incurred (which is a part of the $217,000 in combined attorneys' fees and expenses requested, and not in addition to) is also reasonable and necessary for litigation of this nature and size. Finally, Plaintiffs' request that the Court grant a $2,500 Service Award to each Class Representative falls well within the range of service awards that have been approved Tenth Circuit courts.

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval of

[2] Class Counsel obtained up to $3,587,087.36 in benefits for Settlement Class Members, even if not a single Class Member suffered a documented loss. This number was calculated by taking the $50 alternative cash payment and the value of the credit monitoring and identity theft services, outlined below, and multiplying them by 10,624 Settlement Class Members.

Class Action Settlement filed on January 12, 2026 (ECF 51) and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith.[3]

## III. SUMMARY OF SETTLEMENT

The Settlement provides for the certification of a Settlement Class defined as "all living individuals in the United States who were sent notice by Defendant that their Private Information was impacted in the Data Incident." S.A. ¶ 60. Excluded from the Settlement Class are: (a) all persons who are directors and officers of Defendant; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id*. All individuals who fall within the definition of the Settlement Class and do not opt-out of the Settlement are Settlement Class Members. *Id*. ¶ 61. The Settlement Class includes approximately 10,624 individuals.

### A. <u>Settlement Benefits</u>

#### 1. *Documented Expenses and Lost Time Reimbursements*

***First***, Settlement Class Members can claim Cash Payment A, which provides for up to $2,500 per Settlement Cass Member for Documented Losses related to fraud and/or identity theft as a result of the Data Incident. *Id*. ¶ 67(a). Documented Losses include, by way of example, unreimbursed losses relating to fraud or identity theft: if (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. *Id.*

***Second***, Settlement Class Members can also claim Cash Payment B, which provides for up to $20 per hour for up to four hours of Lost Time (or $80 total). *Id*. ¶ 67(b). Settlement Class Members must attest to the amount of time spent to receive this benefit, which can be claimed in

[3] Plaintiffs initially filed their Motion for Preliminary Approval on January 9, 2026. ECF 47. The Court struck Plaintiffs' Motion for being over-length (ECF 48) and Plaintiffs' subsequently filed a motion to file an overlength brief and re-filed their Motion for Preliminary Approval at ECF 51.

addition to Cash Payment A, Documented Losses. *Id.*

2. *Alternative Cash Payment*

Yes Communities will also provide Cash Payment C, an alternative cash payment of $50 per claimant in the alternative to claims for Documented Losses and/or Lost Time. *Id.* ¶ 67(c). There is no documentation required to claim this benefit. *Id.* However, participating Settlement Class Members can choose either or both Cash Payment A (Documented Losses) and Cash Payment B (Lost Time), or in the alternative, Cash Payment C (Alternate Cash). *Id.* ¶ 66.

3. *Credit Monitoring and Identity Theft Protection Services*

Settlement Class Members can also obtain three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance, regardless of which Cash Payment they select. *Id*. ¶ 68.

This benefit of the settlement bears with it significant value. The credit monitoring product offered in response to the Data Incident is not offered at retail, but the comparable product at retail is $7.99 per month.[4] Thus, the value of three years of this service is $287.64 per Settlement Class Member, or $3,055,887.36 in the aggregate.

4. *Security-Related Improvements*

In addition to providing monetary relief, Yes Communities will provide a confidential declaration to Class Counsel describing its information security improvements since the Data Incident and estimating the cost of those improvements. *Id.* ¶ 69. Yes Communities agreed to pay for such ongoing security changes separate and apart from other settlement benefits. *Id.*

## IV. ARGUMENT

### A. The Percentage-of-the-Benefit Method is the Appropriate Method Used to Calculate Attorneys' Fees in this Case.

[4] https://reliashield.com/

Tenth Circuit and Colorado courts utilize two main approaches to analyzing a request for attorneys' fees: the lodestar method and the percentage-of-fund (or percent-of-the-benefit or percent-of-the-recovery) method. *Brown v. Phillips*, 838 F.2d 451, 454 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *Brody v. Hellman,* 167 P.3d 192, 200 (Colo. App. 2007). Under the lodestar method, the number of hours reasonably expended by an attorney are multiplied by a reasonable rate, which is adjusted given the characteristics of a particular action. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Under the percentage-of-the-fund method, an award of fees is equal to some percentage of the common fund that the attorneys were successful in procuring during the litigation. *Brown*, 838 F.2d at 454; *Uselton*, 9 F.3d at 853; *Gottlieb*, 43 F.3d at 482.

The Tenth Circuit has recognized a "preference for the percentage of the fund method." *Gottlieb*, 43 F.3d at 483; *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Uselton*, 9 F.3d at 853 *see also Anderson v. Merit*, Nos. 07–cv–00916–LTB–BNB, 07–cv–01025–REB–MJW, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded on a reasonable percentage of the fund created."); *Manual For Complex Litigation (Fourth)*, § 14.121 (the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases).[5] In calculating the percentage, it is appropriate to compare the fee to the total amount recovered for the benefit of the class, even if some of the fund ultimately reverts to the defendant because some class

[5] A lodestar crosscheck is not required in the Tenth Circuit. *See Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (slip copy) (stating lodestar crosscheck is not required in Tenth Circuit); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (same); *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS, WL 7758915, at *3 (E.D. Okla. Mar. 8, 2019) (slip copy) (holding "neither a lodestar nor a lodestar cross check is required").

members choose not to claim their share. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 (1980) (attorneys' fees must be based on the value of the entire common fund, even if some beneficiaries make no claim); *accord Waters v. Intern. Precious Metals Corp*., 190 F.3d 1291, 1298-98 (11th Cir. 1999); *Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir. 1997). It is also appropriate to include the amount of the attorneys' fees in the common fund when calculating the proper percentage. *Manual For Complex Litigation*, *supra*, § 21.7 (proper calculation of settlement benefits includes all fee amounts paid by defendant in addition to class relief).

### B. <u>Plaintiffs' Request for Attorneys' Fees Should be Approved.</u>

#### *1. Plaintiffs' Request for 6% of the Settlement Value in Attorneys' Fees is in Line with the One-Third Customary Fee in Common Benefit Settlements.*

Plaintiffs seek $217,000 in combined attorneys' fees and expenses. Plaintiffs' fee request amounts to approximately 6% of the total benefit created on behalf of the Settlement Class—$3,587,087.36 (as outlined above). $7,001.79 of the $217,000 requested accounts for actual out-of-pocket costs and expenses, meaning that ultimately, the portion of the requested award that will go towards fees is ultimately just under 6%. Federal district courts in Colorado have regularly held that the "customary fee" for a fee award in a common fund settlement is "approximately one-third of the economic benefit bestowed upon the class." *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) (stating that the customary fee in a common fund settlement is approximately one-third of the economic benefit bestowed upon the class); *Rothe v. Battelle Mem'l Inst.*, No. 1:18-cv-03179-RBJ, 2021 WL 2588873, at *8 (D. Colo. June 24, 2021) (same);; *Johnson v. Camino Nat'l Resources, LLC*, No. 19-cv-02742-CMA-SKC, 2021 WL 2550165, at *2 (D. Colo. June 22, 2021) (slip copy) (awarding 40% of gross settlement value); *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award … [was] in the middle of the ordinary 20%-50% range [for

class actions] and … [was considered] presumptively reasonable.").[6] Here, Plaintiffs' request is well below the "customary fee" for a fee award in a common benefit settlement. Plaintiffs' fee request should be granted.

2. *Other Factors Weigh in Favor of Approving the Fee Request*

Whether the Court uses the percentage-of-fund method or the lodestar method, the fee must be reasonable. *Brown*, 838 F.3d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). To determine the reasonableness of the fee, Tenth Circuit courts consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[7] *Brown*, 838 F.3d at 454; *Gottlieb*, 43 F.3d at 482.

a. *The amount involved and the results obtained support approval of Settlement Class Counsel's fee request*

As stated *supra*, the Settlement provides remarkable benefits to Settlement Class Members. Each Settlement Class Member can easily submit a claim for expense reimbursements and lost time or an alternative cash payment, as well as for credit monitoring and identity theft protection services.

[6] *Shaw v. Interthinx*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20%-50% range are "presumptively reasonable"); *Robertson v. Whitman Consulting Org., Inc.*, No. 19-cv-2508-RM-KLM, 2021 WL 4947349, at *5 (D. Colo. Oct. 22, 2021) (slip copy) (awarding 40% of gross settlement amount plus costs); *Whittington v. Taco Bell of America, Inc.*, No. 10–cv–01884–KMT–MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (awarding fees and costs amounting to approximately 39% of the fund as a whole as "within the normal range" in a common fund case); *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (awarding 37% of the gross settlement award).

[7] A court does not need to specifically address each *Johnson* factor in a case. *Blanco v. Xtreme Drilling & Coil Services, Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 4041456, at *4 (D. Colo. July 7, 2020) (citing *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10thCir. 1998)). Furthermore, "a court may assign different relative weights to the factors—that is, none of the factors is inherently equiponderant, preponderant, or dispositive." *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 705-06 (D. Colo. 2007). The factors also need not be exhausted in every case. *Jenkins v. Pech*, No. 8:14CV41**,** 2016 WL 715780, at *1 (D. Ne. Feb. 22, 2016). In a common fund case, the greatest weight is to be given to the monetary results achieved. In fact, the monetary results may be considered "decisive." *Brown*, 838 F.2d at 456. Although the time and labor involved is a "relevant" factor, it should be assigned a lesser weight than the monetary results achieved, risks undertaken, and other factors that "predominate." *Id*

And Settlement Class Members can rest assured that their PII is safely protected as a result of the data security enhancements implemented by Defendant. These are real, significant benefits that without the efforts of Plaintiff and Settlement Class Counsel, and their willingness to take on the attendant risks of litigation, would not have been made available to Settlement Class Members. Thus, this factor weighs heavily in favor of granting this fee request.

*b. The contingent nature of the case, the risks of litigation, preclusion of other employment by Settlement Class Counsel, and undesirability of the case all weigh in favor of Settlement Class Counsel's fee request.*

Settlement Class Counsel took this case on a purely contingent basis. Fee Decl. ¶ 6. The retainer agreements Settlement Class Counsel has with Plaintiffs do not provide for fees apart from those earned on a contingent basis, and, in the case of class settlement, attorneys' fees would only be awarded to Settlement Class Counsel, if approved by the Court. *Id.* As such, attorneys' fees were not guaranteed in this case. *Id.* Settlement Class Counsel assumed significant risk of nonpayment or underpayment of attorneys' fees. *Id.* Thus, Settlement Class Counsel took on these significant risks knowing full well their efforts may not bear fruit. *Id.*

This case involved complexities of data breach cases that are novel and evolving. *See Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Plaintiffs faced the risk of obtaining class certification. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action). Plaintiffs also would have had difficulties in demonstrating

causation and damages. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (holding under *Daubert* motion that causation was not met for class certification purposes in data security breach case); *In re TJX Cos. Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. Nov. 29, 2007) ("[T]he need for individualized damages decisions does not ordinarily defeat predominance where there are … disputed common issues as to liability.'") (quoting *Tardiff v. Knox Co.*, 365 F.3d 1, 6 (1st Cir. 2004)). Continued litigation further would have required formal discovery, depositions, expert reports, maintaining class certification throughout trial, and summary judgment, as well as possible appeals (interlocutory and/or after the merits), which would require additional rounds of briefing and the possibility of no recovery at all.

Tenth Circuit courts "have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award." *Blanco,* No. 16-cv-00249-PAB-SKC, 2020 WL 4041456, at *5-6 (approving requested 38% of settlement amount where attorneys worked on a contingent basis) (internal citations omitted); *see Shaw v. Interthinx*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (awarding $2 million in attorneys' fees, representing 33⅓% of the maximum value of the common fund). Accordingly, these factors weigh in favor of approval of the attorneys' fees request here.

*c. The skill required to litigate this matter and Settlement Class Counsel's extensive experience in class action data breach litigation support the request for attorney's fees.*

As set forth *supra*, the skill required to litigate data breach cases is great, in part due to the quickly evolving nature of data breach and privacy law. Here, the lawyers representing Plaintiffs are some of the most experienced in this area of the practice. See ECF 51-2, MPA Decl. ¶¶ 26-31. Settlement Class Counsel worked hard to obtain information regarding the Data Incident and

analyzed that information (along with their experience and the knowledge gained from other data breach class actions) to negotiate a favorable Settlement. The Settlement addresses the type of injury and repercussions sustained by Settlement Class Members in the wake of the Data Incident. Fee Decl. ¶ 21. Thus, this factor weighs in favor of Plaintiffs' fee request.

*d. The requested fee falls well within the range of attorneys' fees granted in similar cases.*

Settlement Class Counsel's request for just 6% of the value of the Settlement in attorneys' fees is reasonable compared to similar cases. Tenth Circuit courts have routinely made similar fee awards of a much larger percentage of the benefit. *See, e.g., Droegemueller v. Petroleum Dev. Corp.*, Nos. 07–cv–1362–JLK–CBS, 07–cv–2508, 2009 WL 961539 (D. Colo. April 7, 2009) (awarding 33⅓% without a lodestar cross-check); *Robertson*, 2021 WL 4947349, at *5 (awarding 40% of gross settlement amount plus costs without a lodestar crosscheck); *Johnson*, 2021 WL 2550165, at *2 (awarding 40% of gross settlement value without lodestar crosscheck); *Farley v. Family Dollar Stores, Inc.*, 2014 WL 5488897 (D. Colo. Oct. 30, 2014) (awarding 33% attorneys' fees and costs without performing lodestar crosscheck).

This fee request falls well below the 20% to 30% range of attorneys' fee awards found "presumptively reasonable" in Colorado. *See, e.g., Brody,* 167 P.3d at 203. Awards of significantly more than 6% of the settlement benefit are commonplace in similar privacy cases in the Tenth Circuit and other circuits. *See, e.g., Braver v. Northstar Alarm Servs., LLC*, Case No. CIV-17-0383-F, 2020 WL 6468227, at *6 (W.D. Okla. Nov. 3, 2020) (slip op.) (awarding one-third of the common fund in attorneys' fees in TCPA case); *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million").

*e. A Summary Lodestar Crosscheck Confirms the Reasonableness of the Fees Requested.*

Although no lodestar crosscheck is required, a summary lodestar crosscheck confirms the reasonableness of the fees requested here. Settlement Class Counsel has expended 338.7 hours of work on this matter to date, and will expend another 20-40 hours of time consummating this Settlement. Fee Decl. ¶¶ 13-14. At the normal billing rates that have been approved by courts across the country, this equates to a lodestar of $263,671.70, and the fees requested represent a negative lodestar multiplier of .82 ($217,000 divided by $263,671.70), meaning that Class Counsel will receive payment for just 82% of the hours they put in to this case, when applying their customary billing rates. In complex litigations such as this, Colorado courts have found that positive lodestar multipliers of 1 and higher are warranted, holding that "a multiplier of 2.3 times the lodestar is well within the range of fees customarily awarded in complex litigation." *Brody*, 167 P.3d at 203, *citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)(awarding 2.0 multiplier); *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 549 (S.D.Fla.1988)("In cases as complex as this, with risks of establishing liability as great as in this case, and with legal representation as fine as it was here, a lodestar multiple of three appears to be average."), aff'd, 899 F.2d 21 (11th Cir.1990); *In re MGM Grand Hotel Fire Litig*., 660 F.Supp. 522 (D.Nev.1987)(awarding multipliers from 1.0 to 2.95); *In re Beverly Hills Fire Litig.,* 639 F.Supp. 915 (E.D.Ky.1986) (awarding multipliers from 1.0 to 5.0); *Squillacote v. United States,* 626 F.Supp. 127 (E.D.Wis.1985) (awarding 3.0 multiplier); *Brewer v. S. Union Co., 607 F.Supp.* 1511 (D.Colo.1984)(awarding multipliers from 2.0 to 4.0). Class Counsel's fee request here, which represents a negative lodestar multiplier, confirms the reasonableness of the requested fee.

**C. <u>Plaintiffs' Requested Costs are Reasonable and Should be Granted.</u>**

"[A]n attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik v. Storage Corp.*, No. 95-B-

2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (internal citation omitted); *Peace Officers' Annuity & Benefit Fund of Georgia*, No. 17-cv-0304-WJM-NRN, 2021 WL 2981970, at *4. Due to Settlement Class Counsel's ability to reach an early and excellent settlement for Settlement Class Members, costs and expenses are very modest and total $7,001.29, which is included in Plaintiffs' $217,000 fee request. Fee Decl. ¶ 18. These reimbursable costs and expenses are related to: (a) filing and service fees; (b) court admission fees; and (c) mediation fees. *Id.* These costs and expenses were necessary to prosecute this case and are modest in comparison to the enormous costs that likely would have been incurred if litigation had continued. *Id.* ¶ 19. The Court should grant Class Counsel's request for $7,001.29 in costs and expenses, as a part of (and not in addition to) the $217,000 sought.

**D. <u>Plaintiffs' Request for Service Awards is Reasonable and Should be Granted.</u>**

The Tenth Circuit has held that courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Service Awards are an "efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010). For their efforts on the case, Plaintiffs seek Service Awards in the amount of $2,500.00 each. S.A. ¶ 98. Plaintiffs were actively engaged in this action, which included, assisting in the investigation of the case, producing relevant documents, reviewing and approving pleadings, reviewing the Settlement documents, and answering counsel's many questions. Fee Decl. ¶ 20. Moreover, their modest Service Award requests fall well below the range of service awards that have been approved by courts in this District. *See, e.g., Luken Family Ltd. P'ship, LLP*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (awarding $10,000.00 service award); *Tuten v. United*

*Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. May 19, 2014) (awarding $15,000.00 service award). Thus, this Court should grant the requested Service Awards.

## V. CONCLUSION

Settlement Class Counsel, with the help of Plaintiffs, have made significant benefits available to Settlement Class Members. In return, Plaintiffs seek attorneys' fees, costs, and service awards commensurate with those regularly approved by courts sitting in the Tenth Circuit. The attorneys' fees, expenses, and service awards are reasonable.

Dated: October 6, 2026

Respectfully submitted,

/s/Gary M. Klinger
**MILBERG, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

**CERTIFICATE OF SERVICE**

I, Gary M. Klinger, hereby certify that on October 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system

Dated: October 6, 2026 Respectfully submitted,

/s/Gary M. Klinger
Gary M. Klinger