**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 25-cv-00692-PAB-NRN

(Consolidated with Civil Case Nos. 25-cv-00698-PAB-NRN, 25-cv-00728-PAB-NRN, 25-cv-00819-PAB-NRN, and 25-cv-00937-KAS)

---

Civil Case No. 25-cv-00692-PAB-NRN

MICHELLE O'LEARY, on behalf of herself and all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

---

Civil Case No. 25-cv-00698-PAB-NRN

TERRY WILKINS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

---

Civil Case No. 25-cv-00728-PAB-NRN

TERESA STARKS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

---

Civil Case No. 25-cv-00819-PAB-NRN

BRENTON KAY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

Civil Case No. 25-cv-00937-KAS

JASMIN BURNS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YES COMMUNITIES, LLC,

Defendant.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiffs Michelle O'Leary, Terry Wilkins, Teresa Starks, Brenton Kay, and Jasmin Burns submit this Motion for Final Approval of Class Action Settlement and Memorandum in Support.

## I. INTRODUCTION

On October 24, 2022, this Court preliminarily approved the Settlement between Plaintiffs and Defendant Yes Communities, LLC ("YCL" or "Defendant"), and ordered that notice be given to the class. ECF 55. The Settlement negotiated on behalf of the Class provides for the following types of relief to Settlement Class Members: a) up to $2,500 per person for documented losses; (b) up to $80 for lost time (at a rate of $20 per hour for up to four hours); (c) an alternative cash payment of $50 (in the alternative to claims for documented losses and/or lost time; and (d) credit monitoring services (three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance).

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arms'-length negotiations. This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by YCL, which was represented by a well-regarded law firm. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via US mail. Class Notice reached 83.40% of the Class, easily meeting the due process standard. *See* Declaration of Due Diligence, provided by the Settlement Administrator, attached hereto as Exhibit 1, ¶ 18. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. *Id*. at Exhibits 1 and 3. Class Members have until October 21, 2026 to opt-out of or object to the Settlement. As of October 5, 2026, out of 10,624 Settlement Class Members, **none** sought to be excluded from the Settlement, and **none** have objected. *Id*. ¶¶ 91-20.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant the Plaintiffs' concurrently filed request for attorneys' fees, expenses, and service awards.

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 51) filed on January 12, 2026, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith.[1] Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards filed concurrently with this motion.

## III. SUMMARY OF SETTLEMENT

### A. Settlement Benefits

The Settlement provides for the certification of a Settlement Class defined as "all living individuals in the United States who were sent notice by Defendant that their Private Information was impacted in the Data Incident." S.A. ¶ 60. Excluded from the Settlement Class are: (a) all persons who are directors and officers of Defendant; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. Id. All individuals who fall within the definition of the Settlement Class and do not opt-out of the Settlement are Settlement Class Members. *Id.* ¶ 61. The Settlement Class includes approximately 10,624 individuals.

### A. Settlement Benefits

#### *1. Documented Expenses and Lost Time Reimbursements*

***First***, Settlement Class Members can claim Cash Payment A, which provides for up to $2,500 per Settlement Cass Member for Documented Losses related to fraud and/or identity theft as a result of the Data Incident. *Id.* ¶ 67(a). Documented Losses include, by way of example, unreimbursed losses relating to fraud or identity theft: if (i) the loss is an actual, documented, and

[1] Plaintiffs initially filed their Motion for Preliminary Approval on January 9, 2026. ECF 47. The Court struck Plaintiffs' Motion for being over-length (ECF 48) and Plaintiffs' subsequently filed a motion to file an overlength brief and re-filed their Motion for Preliminary Approval at ECF 51.

unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. *Id.*

***Second***, Settlement Class Members can also claim Cash Payment B, which provides for up to $20 per hour for up to four hours of Lost Time (or $80 total). *Id.* ¶ 67(b). Settlement Class Members must attest to the amount of time spent to receive this benefit, which can be claimed in addition to Cash Payment A, Documented Losses. *Id.*

*2. Alternative Cash Payment*

Yes Communities will also provide Cash Payment C, an alternative cash payment of $50 per claimant in the alternative to claims for Documented Losses and/or Lost Time. *Id.* ¶ 67(c). There is no documentation required to claim this benefit. *Id.* However, participating Settlement Class Members can choose either or both Cash Payment A (Documented Losses) and Cash Payment B (Lost Time), or in the alternative, Cash Payment C (Alternate Cash). *Id.* ¶ 66.

*3. Credit Monitoring and Identity Theft Protection Services*

Settlement Class Members can also obtain three years of one-bureau credit monitoring, including at least $1,000,000 in identity theft protection insurance, regardless of which Cash Payment they select. *Id*. ¶ 68.

*4. Security-Related Improvements*

In addition to providing monetary relief, Yes Communities will provide a confidential declaration to Class Counsel describing its information security improvements since the Data Incident and estimating the cost of those improvements. *Id.* ¶ 69.Yes Communities agrees to pay for such ongoing security changes separate and apart from other settlement benefits. *Id*.

## IV. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a

class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. ECF 55. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 51), this Court should certify the class for purposes of final approval of the Settlement.

Next, the Court must determine whether the settlement is fair, reasonable, and adequate. *See Reiskin v. Reg'l Transportation Dist. Colorado*, No. 14-CV-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (settlement may be finally approved when it is fair, reasonable, and adequate). "The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc*., 41 F. Supp.3d 1003, 1007 (D. Colo. May 19, 2014). Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187 (10th Cir. 2002).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the 10th Circuit, approval of a class action must also satisfy the factors set out by the court

in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

## V. ARGUMENT

Here, the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, and should be finally approved.

### *1. Whether the settlement was fairly and honestly negotiated.*

The negotiations in this matter occurred at arm's length and were facilitated by a well respected third party mediation, with extensive experience in data breach class actions. See ECF 51-1 (MPA Decl.) at ¶¶ 9-14. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas v. Kmart Corp*., 234 F.R.D. 688 at 693 (D. Colo. 2006). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### *2. The Strength of the Plaintiffs' Case.*

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Defendant's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Complaint. While Plaintiffs believe they have strong claims

and would be able to prevail, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

***3. The risk, expense, complexity, and likely duration of further litigation.***

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 10,624 individuals (each of whom may need to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that has already asserted and will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further litigation.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path

to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

***4. The risk of maintaining class action status throughout the trial.***

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

***5. The amount offered in settlement.***

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible to make a claim for reimbursements for reimbursement of documented expenses and lost time, or an alternative cash payment of $50. Further, each class member may make a claim for three years of credit monitoring and identity theft protection services, regardless of whether they claim reimbursement for documented losses and lost time or an alternative cash payment.

This settlement is a strong result for the Class, and is in line with other settlements in cases involving data incidents of similar scope. Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

***6. The amount of discovery completed.***

Before entering into settlement discussions on behalf of class members, counsel should have sufficient information to make an informed decision. Plaintiffs vigorously and aggressively gathered all of the information that was available regarding YCL and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident from Defendant to potentially affected individuals. The parties also informally exchanged significant non-public information concerning the Data Incident and the size of the Class as well as detailed mediation statements in preparation for a successful mediation. ECF 51-2 at ¶ 51-2.

Although the parties did not engage in formal discovery, Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Plaintiffs are well informed about the strengths and weaknesses of this case.

***7. The experience and views of counsel.***

The judgment of experience Plaintiffs' counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Class Counsel), their own experience in other data incident litigation, and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are fair and reasonable in light of reported average out-of-pocket expenses incurred due to a data security incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Class Counsel, who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts.

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

***8. Reaction of the Class Members*.**

The reaction of the Settlement Class to this Settlement is positive. Out of a class of over 10,000 individuals, no Class Members requested exclusion and there were no objections. *See* Exhibit 1, ¶¶ 19-20.

Under all the *Jones* factors, this proposed settlement is fair, reasonable, and adequate, and

should be finally approved.

***9. The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as well as Rule 23.***

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members

to easily find any section that they may be looking for. Thus, it was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On July 27, 2026, Analytics received a mailing list ("Class List") from Counsel for Defendant. The data file contained 10,675 records, including names and last-known mailing addresses for Settlement Class Members. Ex. 1, ¶ 5. Analytics identified 51 duplicate Settlement Class Members, resulting in a Class List of 10,624 unique Settlement Class Members. *Id.* ¶ 6-7. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Postcard Notices to Settlement Class Members with missing or incorrect email addresses. *Id.* ¶ 8. On August 21, 2026, Analytics mailed the approved Postcard Notice to the most current mailing address of 10,624 Settlement Class Members via USPS First Class Mail. *Id.*, ¶ 14 Analytics has reason to believe that direct notice likely reached 8,860 of the 10,624 potential Settlement Class Members, or approximately (83.40%) of the potential Settlement Class. *Id.* ¶ 18. This reach rate is consistent with other court-approved best-practicable notice programs and Federal Judicial Center

Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3]

In addition to the direct mail notice, Analytics created a dedicated Settlement Website entitled www.YESCommunitiesDataIncident.com. *Id.* ¶ 11. The Settlement "went live" on August 20, 2026, and contains a summary of the Settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including Settlement Agreement, Preliminary Approval Order, Claim Form, and Long Form Notice, and allowed potential Settlement Class Members an opportunity to file a Claim Form online. *Id.* Analytics also established a toll-free phone number (866) 307-8556, for potential Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system. *Id.* ¶ 10. Finally, Analytics designated a post office box with mailing address Yes Communities LLC Data Incident, c/o Analytics Consulting LLC, P.O. Box 2002, Chanhassen, MN 55317-2002, in order to receive Requests to Opt-Out, Claim Forms, objections, and correspondence from potential Settlement Class Members. *Id.* ¶ 9.

In short, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

## VI. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant cash relief, and valuable credit monitoring. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of the *Jones* factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 55) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, filed concurrently with the instant motion. Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class and appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award Named Plaintiffs a service award in the amount of $2500, grant Settlement Class Counsel combined attorneys' fees and expenses of $217,000, and grant final approval of this Settlement.

Dated: October 6, 2026

Respectfully submitted,

/s/Gary M. Klinger
MILBERG, PLLC
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

**CERTIFICATE OF SERVICE**

I, Gary M. Klinger, hereby certify that on October 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system

Dated: October 6, 2026 Respectfully submitted,

/s/Gary M. Klinger
Gary M. Klinger